1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NESTOR C. DOMINGO,

        Plaintiff,

   v.

PATRICK R. DONOHUE,

        Defendant.
_____/

Nos. C13-4150 CRB & C13-4151 CRB

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

    These are the second and third lawsuits, in a series of three, brought by pro se plaintiff Nestor Domingo against his former employer, the United States Postal Service ("Postal Service" or "the government"). See Civil Action No. C13-4150 CRB ("Domingo II"); Civil Action No. C13-4151 CRB ("Domingo III"). Domingo's first lawsuit, Civil Action No. C11-5333 CRB ("Domingo I"), was adjudicated when this Court granted the Postal Service's motion for summary judgment. See Order Granting Mot. for Summ. J., Oct. 18, 2013, (C11-5333 CRB) (dkt. 145) ("Order re MSJ"). Domingo's new cases allege discriminatory, harassing, and retaliatory conduct in violation of federal anti-discrimination laws. In addition, Domingo II alleges tort liability and due process violations, while Domingo III alleges breach of contract.

    The government now moves to dismiss all of the claims in Domingo II and Domingo III. In both cases, the government asserts that Domingo's claims must be dismissed under

1  Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or under Rule

2  12(b)(6) because his complaints fail to state a claim.

3      For the reasons discussed below, the Court will GRANT the Motion as to Domingo II,

4  and will GRANT in part and DENY in part the Motion as to Domingo III.

5  **I.      BACKGROUND**

6      Domingo alleges as follows.

7      **A.      Facts Shared By Both Domingo II And Domingo III**

8      Domingo began working at the Postal Service in 1990, and until 2003 he was happily

9  employed there.  Compl. II (C13-4150 CRB) (dkt.1) ¶ 9; Compl. III (C13-4151 CRB) (dkt.

10  1) ¶ 9.  In 2003, the recently installed Postmaster, Patricia Santos-Armstrong, assigned

11  Jeffrey Tillotson to be the new supervisor in the Napa Post Office area where Domingo

12  worked as a rural carrier.  Compl. II ¶ 10; Compl. III ¶ 10.  In November 2003, Domingo's

13  delivery vehicle broke down, but Tillotson refused to provide him with a relief vehicle.

14  Compl. II ¶ 10; Compl. III ¶ 10.  Instead, Tillotson provided the available relief vehicle to a

15  less senior white employee, a decision Domingo, who is of Filipino descent, believed was

16  based on Tillotson's preference for employees of his own race and color.  Compl. II ¶ 10;

17  Compl. III ¶ 10.  After the incident, Domingo filed an Equal Employment Opportunity

18  ("EEO") complaint against Tillotson, which settled in March 2004.  Compl. II ¶ 10; Compl.

19  III ¶ 10.  Domingo believes that ever since filing the EEO complaint, his working conditions

20  have dramatically changed for the worse.  Compl. II ¶ 11; Compl. III ¶ 11.

21      In January 2005, Domingo was involved in a work-related automobile accident.

22  Compl. II ¶ 12; Compl. III ¶ 12.  Upon his return to duty in May 2005, he learned that

23  Tillotson had led other employees to believe that Domingo would not be returning and that

24  his position would be open.  Compl. II ¶ 12; Compl. III ¶ 12.  Domingo felt that he was being

25  pressured to retire in retaliation for his 2004 EEO complaint.  Compl. II ¶ 12; Compl. III ¶

26  12.

27      Domingo also believes that in March 2006, Tillotson retaliated against him for

28  Domingo's efforts in writing a letter and gathering signatures from other employees

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  requesting payment for overtime that Tillotson refused to pay.  Compl. II ¶ 13; Compl. III ¶

2  13.  Tillotson told Domingo's co-workers that Domingo slept with the two women who

3  signed his letter, and that is how he obtained their signatures.  Compl. II ¶ 13; Compl. III ¶

4  13.  Domingo was afraid that the rumors would cause his conditions at work to worsen.

5  Compl. II ¶ 14; Compl. III ¶ 14.

6      Additionally in March 2006, Domingo noticed that he was being followed when he

7  recognized fellow employee Peter Breeland trailing him while he delivered mail.  Compl. II ¶

8  16; Compl. III ¶ 16.  Domingo also heard "surges of noise . . . coming in and out of his

9  vehicle while he was being followed," leading him to believe that his car had been bugged.

10  Compl. II ¶ 16; Compl. III ¶ 16.  Domingo confronted both Tillotson and Breeland about the

11  incident, but neither one gave Domingo an answer.  Compl. II ¶ 16; Compl. III ¶ 16.

12  Eventually, after being followed again and confronting both Tollotson and Breeland again,

13  they "mock[ed]" Domingo and told him that he "will never find out or detect the bug because

14  they used a 'squawk box.'"  Compl. II ¶ 16; Compl. III ¶ 16.

15      As a result of Domingo's working conditions, and the harassing conduct of Tillotson

16  and Breeland, Domingo filed two more EEO complaints.  Compl. II ¶ 15; Compl. III ¶ 15.

17  Both complaints were dismissed through Final Agency Decisions ("FAD") by the Postal

18  Service, but Domingo appealed one of them to the Equal Employment Opportunity

19  Commission ("EEOC"), Office of Federal Operations ("OFO")—EEO Case No. 4F-945-

20  0103-06.  Compl. II ¶¶ 15, 17; Compl. III ¶¶ 15, 17.  EEO Case No. 4F-945-0103-06 was

21  the basis for Civil Action No. C11-5333 CRB, which was adjudicated when this Court

22  granted summary judgment for the Postal Service on October 18, 2013.  See Order re MSJ.

23      **B.    Facts Specific To Claims in Domingo II**

24      Between May 2006 and May 2007, while Domingo waited for the EEOC's decision

25  on EEO Case No. 4F-945-0103-06, he felt that the hostility and harassment at work

26  increased.  Compl. II ¶ 17.  As a result, he decided to keep to himself, only interacting with

27  fellow employees when necessary for work.  Compl. II ¶ 17.

28

3

United States District Court
For the Northern District of California

1    Unknown to Domingo at the time, on April 19, 2007, Postmaster Patricia Santos-
2    Armstrong emailed Dr. Saba, a Postal Service medical doctor, and requested a psychological
3    fitness-for-duty examination ("FFDE") of Domingo. Id. at 14. In the initial email to Dr.
4    Saba, Santos-Armstrong referred to the claims against Tillotson and Breeland in Domingo's
5    2006 EEO complaint as "absurd." Id. at 15. Dr. Saba responded and agreed that an FFDE
6    was appropriate, and noted "that it would be better if . . . Santos-Armstrong could attach
7    letters from co-workers to support her psychiatric request for-fit-for (sic) duty on
8    [Domingo]." Id. at 15. Melanie Tull, a white co-worker of Domingo's and one of the female
9    employees rumored to have had a romantic relationship with him, submitted a letter on April
10   23, 2007 containing several allegations against Domingo. Id. at 12. On April 24, 2007,
11   Santos-Armstrong prepared the FFDE request. Id. at 16. On April 25, 2007, Tillotson
12   submitted his own letter supporting Melanie Tull's allegations. Id. at 13. To Domingo, the
13   "tribunal" who ordered the FFDE was biased, because it was comprised of individuals
14   against whom he had ongoing EEO complaints. Id. at 17.

15   On May 2, 2007, Supervisor Tillotson ordered Domingo to submit to an FFDE on
16   May 3, 2007. Id. ¶ 18. He was not given any notice or explanation as to why an FFDE was
17   being conducted, nor was he given the opportunity to demonstrate why an FFDE was
18   inappropriate. Id. at 21. In addition, he had no chance to "present evidence[,] . . . call
19   witnesses[,] . . . know opposing evidence[,] . . . [or] cross-examine adverse witnesses." Id.
20   Dr. Saba, who conducted the FFDE, "does not have specialized training in mental
21   evaluation." Id. at 16. The next day at work, May 4, 2007, Tillotson "made a public
22   announcement that [Domingo][] is not to be at work because[] Dr. Saba, found him mentally
23   unfit for duty." Id. at 11. He was immediately placed on unpaid administrative leave until a
24   second doctor, Dr. Raffle, could evaluate him, and both Dr. Saba and Dr. Raffle could review
25   the results. Id. at 12. Domingo was "severely anguished and humiliated" after the
26   announcement, and had to recover in a nearby parking lot from the "sudden blurring of his
27   vision and fast, palpitating, and fluctuating heartbeat." Id. He fell ill as a result of the stress
28   and depression of being placed on leave. Id. ¶ 18. Domingo was originally scheduled to

4

United States District Court
For the Northern District of California

1  attend the second FFDE with Dr. Raffle on May 7, 2007, but his wife informed the Postal

2  Service that he had fallen ill and could not attend.  Id.  Domingo's wife also filed a workers

3  compensation claim, asserting that the actions of May 4, 2007 caused Domingo's illness.  Id.

4        Notwithstanding Domingo's illness, Tillotson continued scheduling and re-scheduling

5  Domingo for the second FFDE with Dr. Raffle.  Id. ¶ 19.  Some time after May 4, 2007,

6  Domingo retained counsel, who requested that the Postal Service provide Domingo with their

7  justification for requiring the FFDE.  Id. at 12.  The Postal Service sent Domingo both

8  Melanie Tull's and Supervisor Tillotson's letters.  Id. at 12-13.  Domingo believed that Tull's

9  letter was just a "twisted version of [Domingo's] . . . EEO complaint in 4F-945-0103-06,"

10  and contained unproven allegations against him.  Id. at 13, 16.  Moreover, Tull wrote the

11  letter because of pressure from management.  Id.  After receiving the letters, Domingo still

12  refused to attend the second FFDE, because he was ill, but also because he believed that the

13  Postal Service had yet to show just cause for the evaluation.  Id. at 16-17.  Domingo believed

14  that the request for the FFDE was based solely on Tull and Tillotson's letters, because the

15  Postal Service provided no other evidence supporting the supposition that Domingo was a

16  threat or could not perform the essential functions of his position.  Id. at 16.

17        On June 1, 2007, the Postal Service issued Domingo a Notice of Separation citing

18  "Not Fit For Duty/Failure to attend FFD examination."  Id. ¶ 19.  Domingo timely filed a

19  grievance challenging the Notice of Separation, and a hearing was scheduled for July 9,

20  2007.  Id. ¶ 20.  Still sick, Domingo could not attend the hearing, but he approved an

21  agreement ("Agreement") reached by a union steward on his behalf between the National

22  Rural Letter Carriers Association and management.  Id. ¶ 20; see Domingo II, Domingo

23  Decl. (dkt. 19) Ex. A.  The Agreement put the Notice of Separation in "abeyance pending the

24  results of the [second] Fitness for duty examination" by Dr. Raffle, which Domingo agreed to

25  attend on August 9, 2007.  Compl. II ¶ 20; see Domingo II, Domingo Decl. Ex. A.  Domingo

26  requested that a Tagalog interpreter be provided at the examination, but Tillotson denied the

27  request.  Compl. II ¶ 20.  On July 11, 2007, Domingo filed EEO Case No. 4F-945-1079-07,

28  his fourth EEO claim, asserting that the Notice of Separation was the result of discrimination,

United States District Court
For the Northern District of California

1  retaliation, and harassment by the Postal Service.  Domingo II, Wang Decl. (dkt. 10) Ex. A at

2  40.

3        **C.      Facts Specific To Claims in Domingo III**

4        The Agreement reached between Domingo and management states in part:

5        After review of the grievance file, it was agreed that the grievant Nester Domingo will
         participate in the Psychiatric Fitness for Duty Examination that will be set up by the
6        Oakland Medical Unit. . . . The grievant is to attend and participate in the Fitness for
         duty examination.  In the event the grievant fails to attend and participate in the
7        Fitness for duty as directed by both the parties in this agreement, the subject removal
         will become effective and the grievant will be removed from the Postal Service.
8
         If the grievant attends and participate (sic) as required by this agreement, the notice of
9        removal issued to the grievant will be put in abeyance pending the results of the
         Fitness for duty examination.  If the grievant is found fit for duty, the removal notice
10       will be removed from all files and the grievant returned to duty.  If the grievant is
         found not fit for duty and there are no known medical treatments or medication
11       available that would make the grievant fit for duty, management may take the
         appropriate administrative action up to and including removal from the Postal Service.
12

13  Domingo III, Howard Gibbs Decl. (dkt 17) Ex. A;[1] see Compl. ¶ 18, at 9 (summarizing the

14  Agreement in Domingo's own words).  Per the agreement, Domingo attended the second

15  FFDE with Dr. Raffle, but not before he was evaluated by his own doctors at Kaiser

16  Permanente.  Compl. III ¶ 18, at 9, 10.  At the FFDE, Domingo provided Dr. Raffle with

17  copies of his medical and psychiatric records from Kaiser, including a report by Dr. Kaplan,

18  a forensic psychologist, which concluded that he was fit for duty.  Id. at 9.  Two other

19  "mental health professionals at Kaiser" found Domingo fit for duty as well.  Id. at 10.  Dr.

20  Raffle examined Domingo and reviewed the Kaiser records, but concluded again that

21  Domingo was not fit for duty.  Id. at 9.

22        Dr. Raffle forwarded his findings, along with the Kaiser records, to Dr. Saba.  Id. at

23  10.  Because of the conflict between Dr. Raffle and Dr. Kaplan's diagnoses, Dr. Saba

24  determined that Domingo had to undergo a third FFDE.  Id. at 10-11.  During this time,

25  Domingo could not return to work.  Id. at 10.  Domingo never attended the third FFDE; thus

26

27        [1]The Agreement is central to Domingo's complaint, he refers to it in his complaint, and there
      is no dispute as to its authenticity.  Thus, while it is not attached to the complaint nor has either party
28    formally requested that it be judicially noticed, this Court may take judicial notice of the Agreement.
      See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).  The Postal Service attached the complete
      Agreement to Howard Gibbs' declaration.  See Domingo III, Gibbs Decl. Ex. A.

on September 18, 2008, Domingo was issued a "Notice of Separation Not Fit-For-Duty . . . on account that [Domingo] refused to submit to another psychiatric fitness for duty to one of [the Postal Service's] selected doctors." Id. at 11.  On October 10, 2008, Domingo received a letter of decision notifying him that October 26, 2008 would be his last day.[2]  Id.  Domingo filed EEO Case No. 4F-945-0007-09, his fifth EEO claim, on December 24, 2008, alleging that the Postal Service was in breach of his July 9, 2007 agreement, as well as claims of discrimination, retaliation, harassment, and hostile work environment. Id. at 11; see Domingo III, Domingo Decl. (dkt. 24) Ex. 2-B.

### D.      Summary of Domingo's EEO Complaint History

Domingo's problems with the Postal Service date back to 2003 when he pursued his first Postal Service EEO complaint against his supervisor Jeffrey Tillotson.  Compl. II ¶ 10, at 4.  That matter (EEO Case No. 4F-945-0063-04) was settled in mediation before Domingo filed a formal complaint.  Domingo II, Wang Decl. Ex. A, at 2.  Since then, Domingo filed five additional EEO complaints:

(1) EEO Case No. 4F-945-0019-06 filed in February 2006.  Id.  The Postal Service filed a Final Agency Decision ("FAD") dismissing the complaint for failure to state a claim. Id.  Domingo did not appeal the decision.  Id.  Thus, the claims contained in that complaint were not administratively exhausted for purposes of filing a civil suit.  See Order Granting Mot. to Dismiss, Mar. 13, 2012 (C11-5333 CRB) (dkt. 31), at 4 ("Order re MTD").

(2) EEO Case No. 4F-945-0103-06 filed in May 2006.  Domingo II, Wang Decl. Ex. A, at 2.  Domingo appealed the Postal Service's and the U.S. Equal Employment Opportunity Commission's ("EEOC") decision, thus exhausting his administrative remedies as to the claims in that complaint.  Id.  Domingo then filed Civil Action No. C11-5333 CRB, which this Court adjudicated by granting the Postal Service's motion for summary judgment in October 2013.  See Order re MSJ.

---

[2]Domingo did not actually leave the Postal Service until April 2, 2009 due to unpaid vacation time.  Compl. III ¶ 18, at 11.

1   (3) EEO Case No. 4F-945-0148-07 filed in July 2007.  Domingo II, Wang Decl. Ex.

2   A, at 2.  Domingo appealed the FAD decision dismissing the complaint on procedural

3   grounds, but when the appeal was affirmed by the EEOC, OFO, Domingo took no further

4   action.  Id.  Thus, the claims in that complaint were not administratively exhausted for

5   purposes of filing a civil suit.  See Order re MTD at 5.

6   (4) EEO Case No. 4F-945-0179-07 filed in July 2007.  Domingo II, Wang Decl. Ex.

7   A, at 3.  A FAD finding no discrimination was issued in February 2009, Domingo appealed

8   and OFO affirmed in April 2011.  Id.  Domingo sought reconsideration of OFO's decision,

9   which was denied on June 13, 2013.  Compl. II at 33.  Domingo timely filed civil action C13-

10   4150 CRB on Sept. 9, 2013.

11   (5) EEO Case No. 4F-945-0007-09 filed in October 2008.  Domingo II, Wang. Decl.

12   Ex. A, at 3.  A FAD finding no discrimination was issued in March 2011.  Id.  Domingo

13   appealed the FAD to OFO in April 2011.  Id.  OFO affirmed the FAD on June 18, 2013.

14   Compl. III at 22.  Domingo timely filed civil action C13-4151 CRB on Sept. 9, 2013.  Id. at

15   1.

16   Both Domingo II and Domingo III generally invoke Title VII of the Civil Rights Act

17   of 1964, 42 U.S.C. § 2000e et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et

18   seq.  Compl. II ¶ 3, at 2; Compl. III ¶ 3, at 2.   In addition, Domingo II alleges tort and due

19   process violations, Compl. II ¶ 7, at 3, and Domingo III alleges breach of contract, Compl. III

20   ¶ 7, at 3.

21   The government moves to dismiss both cases.  It argues that all claims in Domingo II

22   must be dismissed as either unexhausted, barred by res judicata, barred by principles of

23   sovereign immunity, or because they fail to state a claim.  Domingo II, Mot. to Dismiss (dkt.

24   9), at 2 ("MTD II").  It further argues that all claims in Domingo III must be dismissed as

25   either unexhausted, barred by res judicata, lack of standing, or because they fail to state a

26   claim.  Domingo III, Mot. to Dismiss (dkt. 16), at 1 ("MTD III").

27

28

United States District Court
For the Northern District of California

**II.     LEGAL STANDARD**

When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987). Further, when a plaintiff appears pro se, as Domingo does here, his complaint must "be liberally construed" and be "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are presumed to lack subject matter jurisdiction, and the plaintiff bears the burden of establishing that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). The Court may look beyond the complaint to evaluate subject matter jurisdiction. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (citing Gemtel Corp. v. Cmty. Redev. Agency, 23 F.3d 1542, 1544 (9th Cir. 1994)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)(6)). Dismissal is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). When determining plausibility, allegations pertaining to material facts are accepted as true for purposes of the motion and construed in the light most favorable to the non-moving party. Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). If dismissal is ordered, the Court may deny leave to amend if amendment would be futile. See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, a court may not consider any materials outside of the pleadings when ruling on a 12(b)(6) motion. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). In

*United States District Court*
*For the Northern District of California*

9

1    certain circumstances, however, the Court may take judicial notice of materials that are

2    beyond the pleadings.  See U.S. v. Corinthian Colls., 655 F.3d 984, 998-99 (9th Cir. 2011).

3    Those materials include information submitted with the complaint, matters of public record,

4    and other unattached evidence on which the complaint "'necessarily relies' if: (1) the

5    complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3)

6    no party questions the authenticity of the document."  Id. at 999 (citation omitted).

7    **III.    DISCUSSION**

8         Even though there are two separate complaints (Domingo II and Domingo III), and

9    two separate motions to dismiss (MTD II and MTD III), certain claims share similar facts

10   and arguments.  Thus, this Order discusses some claims from both cases together, while

11   discussing other claims individually.

12        **A.    Domingo II and Domingo III Shared Claims**

13             **1.    Domingo's Discrimination, Retaliation, Harassment, and Hostile
                 Work Environment Claims Are Barred By Res Judicata**

14   Res judicata or claim preclusion refers to the preclusive effect of a judgment in

15   foreclosing relitigation of claims that were raised or should have been raised in earlier

16   litigation.  Frank v. United Airlines, 216 F.3d 845, 850 (9th Cir. 2000); see also Owens v.

17   Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) ("Res judicata, also

18   known as claim preclusion, bars litigation in a subsequent action of any claims that were

19   raised or could have been raised in the prior action.").  "For claim preclusion to apply, there

20   must be (1) an identity of claims in the two actions; (2) a final judgment on the merits in the

21   first action; and (3) identity or privity between the parties in the two actions."  Frank, 216

22   F.3d at 850.

23             **a.    Identity of claims**

24        In determining whether the prior litigation involved the same claim, the Court

25   considers four questions: "(1) whether rights or interests established in the prior judgment

26   would be destroyed or impaired by prosecution of the second action; (2) whether

27   substantially the same evidence is presented in the two actions; (3) whether the two suits

28   involve infringement of the same right; and (4) whether the two suits arise out of the same

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  transactional nucleus of facts." <u>Gospel Missions of Am. v. City of L.A.</u>, 328 F.3d 548, 555

2  (9th Cir. 2003) (citing <u>Fund for Animals, Inc. v. Lujan</u>, 962 F.2d 1391, 1398 (9th Cir. 1992)).

3  The central criterion, however, is "whether the two suits arise out of the same transactional

4  nucleus of facts." <u>Frank</u>, 216 F.3d at 851 (citing <u>Costantini v. Trans World Airlines</u>, 681

5  F.2d 1199, 1201-02 (9th Cir. 1982)).  Furthermore, a plaintiff cannot avoid the bar of <u>res</u>

6  <u>judicata</u> simply by "alleging conduct by the defendant not alleged in his prior action or by

7  pleading a new legal theory." <u>McClain v. Apodaca</u>, 793 F.2d 1031, 1034 (9th Cir. 1986).

8        In both new cases, Domingo's discrimination, retaliation, harassment, and hostile

9  work environment claims arise out of the same "transactional nucleus of facts" as in

10  Domingo I. <u>Frank</u>, 216 F.3d at 851 (citation omitted).  In all three actions, Domingo alleges

11  that he was subjected to discrimination, retaliation, harassment, and hostile work

12  environment because of his race, color, national origin, and prior EEO activity, which formed

13  the basis of his May 3, 2007 FFDE and ultimately his June 1, 2007 Notice of Separation.

14  <u>Compare</u> Compl. II ¶¶ 10-21 and Compl. III at 14 <u>with</u> Domingo I, Plaintiff's Objections

15  and Responses to Mot. for S.J., (C11-5333 CRB) (dkt. 143), at 4-7.

16        Domingo does point to new evidence—Melanie Tull's letter, supervisor Tillotson's

17  letter, and the e-mails between Postmaster Santos-Armstrong and Dr. Saba—as

18  distinguishing the claims.  Domingo II, Plaintiff's Responses and Objections to Defendant's

19  Motion to Dismiss (dkt. 18), at 11 ("Opp'n II").  But Domingo cannot avoid <u>res judicata</u> by

20  alleging conduct by the Postal Service that he failed to allege in the first action.  <u>Apodaca</u>,

21  793 F.2d at 1034.  While the new evidence possibly bolsters his claims, those claims still

22  allege the same cause of action and arise from the same nucleus of facts.  To Domingo,

23  Santos-Armstrong's emails, and Tull's and Tillotson's letters were evidence that the impetus

24  behind the ordered FFDE was discrimination or retaliation, and thus the motivations behind

25  the Notice of Separation were the same.  <u>See generally</u> Compl. II at 11-17.  These are the

26  same general claims adjudicated in Domingo I.  In fact this Court, in its order granting

27  defendant's motion for summary judgment in Domingo I, relied on facts regarding

28  Domingo's May 3, 2007 FFDE and his June 1, 2007 Notice of Separation.  Order re MSJ at

United States District Court
For the Northern District of California

2-3.  Moreover, Domingo is unclear as to when he became privy to the letters and emails.  He only states that he received the emails "later," and that he received letters after "[Domingo's] counsel requested . . . the reason" for the FFDE.  Compl. II at 12, 14.  Assuming Domingo had not learned of the evidence before filing EEO Case No. 4F-945-0103-06 in May 2006, there is no doubt he knew of the evidence before filing Civil Action C11-5333 CRB in November 2011, since he referred to the evidence in EEO Case No. 4F-945-0179-07, which was filed in July 2007.  Therefore, not only does the evidence speak to the same claims adjudicated in Domingo I, it likely should have been presented in Domingo I.  See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 652 (9th Cir. 1988) (holding that a Plaintiff is precluded from relitigating issues that were raised or could have been raised in the prior action when he merely presents a new legal theory).

Two out of the three other factors also lean towards finding that Domingo II and Domingo III raise the same claims as Domingo I.  First, allowing Domingo's claims to go forward would impair the Postal Service's freedom from liability for the Title VII claims in Domingo I.  This Court already held that Domingo produced no evidence supporting his claim that the result of the FFDE and the Notice of Separation were pretext for discrimination.  Order re MSJ at 6.  It would be in complete contravention of that ruling to allow Domingo's same claims to go forward in these cases.

Second, all three suits involve the infringement of the same rights, since all three suits allege violations in conjunction with Title VII.  In Domingo I, this Court granted summary judgment because Domingo failed to show that the Notice of Separation premised on the FFDE was pretext for discrimination, the required burden under Title VII.  Order re MSJ at 6.  Here, Domingo would be tasked with proving again that requiring the FFDE and filing the Notice of Separation was pretext for discrimination—the exact same argument as in Domingo I based on essentially the exact same evidence.

The final criterion, which leans slightly in Domingo's favor, is that he has more evidence in Domingo II and Domingo III than he had in Domingo I.  That said, there is no reason why Domingo could not have presented the "new" evidence in Domingo I.

**United States District Court**
For the Northern District of California

1    Moreover, because the evidence speaks to the same causes of action arising out of the same

2    nucleus of facts—discrimination, retaliation, harassment, hostile work environment—it does

3    not detract from the conclusion that Domingo I, Domingo II, and Domingo III allege the

4    same claims.

5                    **b.      Final judgment on the merits**

6         Res judicata also requires a final judgment on the merits in the first case.  Frank, 216

7    F.3d at 850.  Summary judgment is a final judgment on the merits.  See Hells Canyon Pres.

8    Council v. U.S. Forest Serv., 403 F.3d 683, 686 (9th Cir. 2005).  Accordingly, there was a

9    final judgment on the merits in Domingo I.  See generally Order re MSJ.

10                   **c.      Privity of parties**

11        The final requirement of res judicata is privity of parties.  Frank, 216 F.3d at 850.

12   Because Nestor Domingo is the same party in Domingo I, Domingo II, and Domingo III,

13   privity is established.  See Hooker v. Klein, 573 F.2d 1360, 1367 (9th Cir. 1978).

14        Therefore, the Court GRANTS the government's motion to dismiss all of Domingo's

15   discrimination, retaliation, harassment, and hostile work environment claims in both

16   Domingo II (Domingo's denial of interpreter claim is discussed individually below, but is

17   also dismissed) and Domingo III with prejudice.

18   **B.      Claims Only In Domingo II**

19        **1.      This Court Has Jurisdiction Over Only The Discrete Claims**
             **Included In Properly Exhausted EEO Case No. 4F-945-0179-07**
20

21        In addition to being barred by res judicata, this Court lacks jurisdiction over

22   Domingo's discrimination claims that were not administratively exhausted.  Title VII

23   requires a federal employee to exhaust administrative remedies before filing a discrimination

24   case in federal district court.  Vinieratos v. U.S. Dep't of Air Force, 939 F.2d 762, 768 (9th

25   Cir. 1991).  The employee may sue only after "final disposition" of his or her administrative

26   claim.  Id. at 768-69.  "[W]here a plaintiff has never presented a discrimination complaint to

27   the appropriate administrative authority, . . . the district court does not have subject matter

28   jurisdiction."  Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001).

13

United States District Court
For the Northern District of California

1    A federal employee seeking to pursue a discrimination complaint must contact an

2  EEO counselor within 45 days of the discriminatory conduct.  See 29 C.F.R.

3  § 1614.105(a)(1).  "Although it does not carry the full weight of statutory authority, failure to

4  comply with this regulation has been held to be fatal to a federal employee's discrimination

5  claim."  Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002).

6    Title VII also sets filing deadlines that an employee must meet if he wishes to bring

7  suit in federal court after exhausting his claims administratively.  See 42 U.S.C. § 2000e-

8  16(c).  Thus, an employee may bring a discrimination suit within 90 days of the agency

9  employer's initial disposition of the claim or within 90 days of the EEOC's disposition on

10  appeal.  See 29 C.F.R. § 1617.407.  These deadlines operate as statutes of limitation.  See

11  Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 383 (9th Cir. 1997).

12    The government argues that Domingo's discrimination claims based on the Postal

13  Service's decision to send him to an FFDE on May 3, 2007 are time barred.  MTD II at 7.

14  To determine whether Domingo's claims related to the FFDE are time barred, this Court

15  takes judicial notice of exhibits, provided by the government, related to Domingo's EEO

16  complaints.[3]  See Colwell v. Dep't of Health & Human Serv., 558 F.3d

17  1112, 1121 (9th Cir. 2008) (citation omitted) (noting that to determine whether it has subject-

18  matter jurisdiction, a court may examine "affidavits or any other evidence properly before the

19  Court.")

20    It is important to note that before filing EEO Case No. 4F-945-0179-07 on July 17,

21  2007, Domingo pursued his discrimination claims related to the May 3, 2007 FFDE in an

22  earlier EEO Case.  After the Postal Service ordered the May 3, 2007 FFDE, Domingo timely

23  consulted an EEO Counselor and then formally filed EEO Case No. 4F-945-0148-07 on July

24  4, 2007 alleging that the FFDE was discriminatory, retaliatory, and harassing.  Opp'n II at 6;

25  Domingo II, Wang Decl. Ex. B.  The Postal Service issued a FAD dismissing the complaint

26  on July 18, 2007 for procedural reasons, which the OFO affirmed on October 29, 2007.

27

28    [3]The government provided true and correct copies of Domingo's formal EEO complaints, which provide dates and claims relevant to this Motion.  See Domingo II, Wang Decl. Ex A-B.

United States District Court
For the Northern District of California

1    Opp'n II at 6.  At that time, Domingo had 90 days to file a lawsuit in federal court.  42

2    U.S.C. § 2000e-16(c).  He chose not to do so.  Opp'n II at 6.

3         Domingo received his Notice of Separation from the Postal Service on June 1, 2007,

4    and on July 4, 2007 he contacted an EEO Counselor within the 45 day limit.  Id. at 7.  He

5    formally filed EEO Case No. 4F-945-0179-07 on July 17, 2007, alleging that the Notice of

6    Separation was discriminatory, retaliatory, and harassing.  Id.; Domingo II, Wang Decl. Ex.

7    A.  The Postal Service issued a FAD finding no discrimination, the OFO affirmed that

8    decision, and finally the OFO denied reconsideration of its decision on June 13, 2013.

9    Compl. II at 33.  In the denial, the OFO specifically laid out the claims it was deciding:

10        In the underlying case, Complainant filed an EEO complaint alleging that the Agency
          discriminated against him on the bases of race (Asian), national origin (Filipino),
11        color (Brown), disability, age (59), and reprisal for prior protected EEO activity when:
          (1) on June 1, 2007, it issued him a Notice of Separation charging him with failing to
12        report for a fitness-for-duty examination (FFDE) and being found unfit for duty; (2)
          on August 9, 2007, it required him to submit to a FFDE; and (3) during the August 9,
13        2007 FFDE, it denied him an interpreter.

14   Id.  It went on to state that "[t]o the extent that Complainant argued that the May 3, 2007

15   FFDE was discriminatory, we note that the May 3, 2007 FFDE was the subject of a previous

16   complaint which was dismissed . . . ."  Id. at 35.

17        The "jurisdictional scope of a Title VII claimant's court action depends upon the

18   scope of both the EEOC charge and the EEOC investigation."  E.E.O.C. v. Farmer Bros. Co.,

19   31 F.3d 891, 899 (9th Cir. 1994).  The EEOC did not rule on, nor investigate, whether

20   Domingo's May 3, 2007 FFDE was motivated by discrimination or retaliation.  Instead, the

21   EEOC looked only at whether the Postal Service's proffered reasons for the Notice of

22   Separation, i.e. that Domingo was not fit-for-duty and that he refused to attend the second

23   FFDE, was discriminatory.  Because the EEOC did not analyze whether the motivation

24   behind the May 3, 2007 FFDE was itself discriminatory, those claims are not properly before

25   this Court.  Domingo should have pursued those claims under EEO Case No. 4F-945-0148-

26   07.

27        Moreover, even if this Court found that the May 3, 2007 FFDE discrimination claims

28   were within the scope of EEO Case No. 4F-945-0179-07, Domingo contacted an EEO

                                              15

United States District Court
For the Northern District of California

1  Counselor regarding those claims on July 4, 2007—more than 45 days after the May 3, 2007

2  FFDE.  See 29 C.F.R. § 1614.105(a)(1); see Lyons, 307 F.3d at 1105 (barring all of

3  plaintiff's claims arising out of incidents occurring outside the 45 day time limit).  Therefore,

4  those claims are also barred for violating section 1614.105(a)(1).

5       Domingo argues that the "continuing violation doctrine" applies.  Opp'n II at 14.

6  However, that doctrine applies only to claims of company-wide or systematic discriminatory

7  practices, not discrete discriminatory acts like what Domingo alleges here.  See Lyons, 307

8  F.3d at 1107-08.  Domingo states that the Notice of Separation "is the result of the allege

9  (sic) wrongs of the past," but that is a misapplication of the doctrine.  See Opp'n II at 14.

10  Domingo makes two discrete arguments: (1) that he was ordered to attend an FFDE on May

11  3, 2007 for discriminatory reasons; and (2) that the Postal Service's reliance on the results of

12  the FFDE and other information in issuing the Notice of Separation on June 1, 2007 was

13  discriminatory.  The separate issue of whether Domingo was ordered to attend the FFDE for

14  discriminatory reasons, which was not administratively exhausted under EEO Case No. 4F-

15  945-0148-07, does not survive dismissal because of the continuing violation doctrine.

16       Accordingly, this Court does not have jurisdiction over Domingo's Title VII claims as

17  they relate specifically to his May 3, 2007 FFDE.  The Court GRANTS the Postal Service's

18  MTD II with respect to claims arising from that cause of action with prejudice.  The Court,

19  on the other hand, does have jurisdiction over Domingo's discrete Title VII claims related to

20  his June 1, 2007 Notice of Separation.  However, as previously discussed, those claims are

21  ultimately dismissed on grounds of res judicata.  See supra Part III.A.1.

## 2.  Domingo's Discrimination Claim Related To The Denial Of A Tagalog Interpreter Is Dismissed

22

23

24       Domingo claims that he was discriminated against when the Postal Service,

specifically Tillotson, denied his request for a Tagalog interpreter for his August 9, 2007

25  FFDE.  Compl. II at 27.  He alleges that English is his second language, and that he was

26  placed at a disadvantage when he submitted to the FFDE without an interpreter.  Id. at 27-28.

27  Under Title VII, "in order to establish a prima facie case of discrimination, a plaintiff must

28  show (1) that he belongs to a protected class; (2) he was qualified for the position; (3) he was

United States District Court
For the Northern District of California

1   subject to an adverse employment action; and (4) similarly situated individuals outside his

2   protected class were treated more favorably."  Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir.

3   2003).  Here, Domingo does not allege adequate facts to support a prima facie case of

4   discrimination.  First, Domingo has not claimed that denial of an interpreter at an FFDE

5   amounts to an adverse employment action.[4]  An adverse employment action is one that

6   "materially affects the compensation, terms, conditions, or privileges of employment."  Davis

7   v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (citations omitted).  Domingo

8   alleged no facts showing that it was the lack of an interpreter that caused Dr. Raffle to

9   determine him unfit for duty after their August 9, 2007 FFDE.  Thus, the lack of interpreter

10  does not amount to an adverse employment action.

11       The complaint, likewise, provided no examples of similarly situated employees

12  outside of his protected class who were granted interpreters at their FFDE's.  Instead he

13  hinges his argument on Tillotson, the decision-maker, being a "native English (sic) speaker[]

14  and . . . white."  Compl. II at 27.  That allegation is insufficient to establish a prima facie case

15  of discrimination.

16       Because Domingo fails to state a claim, the Court GRANTS the Postal Service's

17  motion to dismiss Domingo's discrimination claim for being denied an interpreter with

18  prejudice.

19          **3.    This Court Does Not Have Jurisdiction Over Domingo's Tort
                    Claims**

20

21       The exclusive remedy available to plaintiffs for torts allegedly committed by the

22  United States, one of its agencies, or "any employee of the Government while acting within

23  the scope of his office or employment" is the Federal Tort Claims Act ("FTCA").  28 U.S.C.

24  § 2679(b)(1); Corey v. McNamara, 265 Fed. App'x 555, 556 (9th Cir. 2008).  The remedy

25  provided by the FTCA is "exclusive of any other civil action or proceeding for money

26  damages."  28 U.S.C. § 2679(b)(1).

27

28       [4]Moreover, Domingo did not request an interpreter nor complain about the lack of an interpreter
    at his first FFDE on May 3, 2007.

1    In order to bring a claim under the FTCA, a plaintiff must first exhaust his or her

2   administrative remedies as outlined by the statute.  See id. § 2675(a) ("An action shall . . . be

3   [invalid] . . . against the United States . . . unless the claimant shall have first presented the

4   claim to the appropriate Federal agency and his claim shall have been finally denied by the

5   agency in writing and sent by certified or registered mail. The failure of an agency to make

6   final disposition of a claim within six months after it is filed shall[] . . . be deemed a final

7   denial of the claim for purposes of this section.").  Section 2675 has an additional

8   jurisdictional requirement that the plaintiff allege a "sum certain." Id.  The Ninth Circuit has

9   interpreted this to mean that a claimant must "file (1) a written statement sufficiently

10  describing the injury to enable the agency to begin its own investigation, and (2) a sum

11  certain damages claim." Blair v. I.R.S., 304 F.3d 861, 865 (9th Cir. 2002) (citation omitted).

12  A "claim is fatally defective where it is not made for a sum certain." Gonzales v. U.S. Postal

13  Service, 543 F. Supp 838, 840 (N.D. Cal. 1982).  The common method for filing a claim is

14  through an "executed Standard Form 95 or other written notification of an incident,

15  accompanied by a claim for money damages in a sum certain" for the injury sustained as a

16  result of the conduct.  28 C.F.R. § 14.2(a).  Plaintiff bears the burden of establishing subject

17  matter jurisdiction by demonstrating that he or she has presented an administrative claim to

18  the proper agency.  Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

19    In Complaint II, Domingo does not address the FTCA, however, in his opposition, he

20  states that he "intended and believes he filed his [administrative] action under FTCA in this

21  instant case" when he filed EEO Case No. 4F-945-0179-07.  Opp'n II at 18-20.  Domingo's

22  EEO complaint does not satisfy the FTCA's administrative requirements; thus this Court

23  does not have subject matter jurisdiction over his tort claims.  In Fairley v. Potter, No. C-01-

24  1363 VRW, 2003 WL 403361 (N.D. Cal. Feb. 13, 2003), the plaintiff employee filed an EEO

25  complaint with the U.S. Postal Service for sexual harassment in violation of Title VII. Id. at

26  *6.  In her federal court complaint, the plaintiff also sought damages for sexual battery or

27  intentional infliction of emotional distress. Id. However, nothing in her EEO complaint or in

28  the Final Agency Decision discussed compensation for tort damages or "mention[ed] or

18

United States District Court
For the Northern District of California

1    discuss[ed] any tort claims separate from her allegation of sexual harassment." Id.  In its

2    motion for summary judgment, the defendant argued that the court lacked subject matter

3    jurisdiction over the plaintiff's tort claims because she failed to exhaust her administrative

4    remedies.  Id. at *5.  The plaintiff responded "that her EEOC complaint suffices to satisfy the

5    exhaustion of administrative remedies requirement of the FTCA."  Id. at *6.  The court

6    disagreed with the plaintiff for two reasons: (1) plaintiff's EEO complaint did not provide

7    notice of her tort claims; and (2) "regardless whether [plaintiff's] Title VII claim may support

8    recovery for damages resulting from emotional distress, it is clear she may not allege and

9    recover separately for tort claims without first complying with the FTCA's mandatory

10   administrative procedures."  Id.; see also Ewing v. Donahoe, No. Civ. 10-cv-0452 GEB-JFM

11   (PS), 2011 WL 6130902, at *4 (E.D. Cal. Dec. 8, 2011) (finding lack of jurisdiction over tort

12   claim because core of Postal Service employee's EEO complaint was premised on disability

13   discrimination and failed to properly present tort claims under FTCA).

14          Like the plaintiff in Fairley, Domingo's EEO complaint sought no damages for tort

15   actions, nor did it specifically allege intentional infliction of emotional distress or negligent

16   infliction of emotional distress.  See Domingo II, Wang Decl. Ex. A, at 42.  While his

17   complaint did mention emotional responses to certain conduct, as the government pointed

18   out, it "fail[ed] to allege any tort, but merely recite[d] a litany of events he claim[ed]

19   support[ed] his belief that he ha[d] been subjected to discrimination and retaliation."  See

20   Reply in Support of MTD II (dkt. 23), at 7-8 ("Reply II").  The FAD and OFO decisions also

21   never addressed Domingo's tort claims.  See Compl. II at 33.  Because Domingo's EEO

22   complaint failed to sufficiently describe the alleged tortious conduct, failed to provide the

23   Postal Service with notice of his tort claims, and failed to allege a sum certain, the Court

24   holds that Domingo did not comply with the administrative procedures of the FTCA.

25   Therefore, the Court GRANTS the Postal Service's motion to dismiss Domingo's tort claims

26   of intentional and negligent infliction of emotional distress with prejudice.

27

28

**4.**     **Domingo Fails To State A Due Process Claim For Which Relief Can Be Granted; Furthermore, Title VII Preempts Domingo's Due Process Claims**

Domingo's procedural due process claim must allege that the Postal Service's actions "deprived [Domingo] of liberty or property interests without due process of law." Fed. Deposit Ins. Corp. V. Henderson, 940 F.2d 465, 474 (9th Cir. 1991). Domingo alleges the deprivation of certain procedural "rights," such as: (1) the Postal Service "gave very little notice of the proposed" FFDE, denying Domingo the ability to seek representation; (2) the Postal Service did not disclose the reasons why Domingo was being subject to a FFDE; (3) the Postal Service deprived Domingo the opportunity to show why a FFDE was inappropriate; (4) the Postal Service deprived Domingo of the right to call witnesses, present evidence, or cross-examine adverse witnesses. Compl. II at 17-22. Domingo provides no facts to support his allegation that he was owed the rights he claims were violated. He simply concludes that the rights existed. For example, because Domingo received one day's notice of the May 3, 2007 FFDE, he concludes that notice was constitutionally improper. Compl. II at 17. Such conclusory allegations fail to establish a cognizable property interest such that Domingo can claim that his procedural due process rights were violated through the FFDE and Notice of Separation procedure. Therefore, he fails to state a due process claim upon which relief can be granted.

Furthermore, Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. Gen. Serv. Admin., 425 U.S. 820, 835 (1976); Nolan v. Cleland, 686 F.2d 806, 814 (9th Cir. 1982). That said, "Title VII does not preclude separate remedies for unconstitutional action other than discrimination." Otto v. Heckler, 781 F.2d 754, 756 (9th Cir. 1986) (internal quotation marks omitted) (citation omitted). Here, Domingo's due process claims are predicated on the identical factual basis as his Title VII discrimination claims. Compl. II at 17-22; see Nolan, 686 F.2d at 815. His due process claims pertain to the way in which the FFDE was decided upon, carried out, and used to justify his Notice of Separation. Compl. II at 17-22. Domingo made the same arguments when he alleged that the FFDE was decided upon, carried out, and used to justify his Notice

1    of Separation in a discriminatory way.  Compl. II at 22-28.  Therefore, Title VII preempts

2    Domingo's due process claims.

3         For the reasons stated above, the Court GRANTS the Postal Service's motion to

4    dismiss Domingo's due process claims with prejudice.

5              **5.     Domingo's Rehabilitation Act Allegations Fail To State A Claim**

6         Domingo alleged violations of the Rehabilitation Act ("Act") in his Domingo II

7    complaint, but the government failed to directly address those claims in its MTD II.  See

8    Compl. II at 29.  The government, however, did generally assert that all of Domingo's claims

9    must be dismissed for failing to state a claim.  See MTD II at 2.

10        In his complaint, Domingo claimed that the Postal Service violated the Act when it

11   insisted on his attending a second FFDE when they knew he was ill.  Id.  "To state a prima

12   facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a person

13   with a disability, (2) who is otherwise qualified for employment, and (3) suffered

14   discrimination because of her disability."  Walton v. U.S. Marshals Serv., 492 F.3d 998,

15   1005 (9th Cir. 2007).  Domingo failed to allege facts supporting any of the Rehabilitation Act

16   elements.  Compl. II at 29.

17        Domingo does not claim to be disabled.  The Act incorporates the ADA's definition of

18   a disability, which is defined as: (A) a physical or mental impairment that substantially limits

19   one or more of the major life activities of such individual; (B) a record of such impairment;

20   or (C) being regarded as having such impairment.  Walton, 492 F.3d at 1005 (citing 42

21   U.S.C. § 12102(2)).  Major life activities include "functions such as caring for one's self,

22   performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

23   working."  Bragdon v. Abbott, 524 U.S. 624, 638 (1998) (citation omitted).  Domingo does

24   not allege that his short-term illness limits one or more major life activities, nor does he

25   allege that the Postal Service regards his illness as impairing one or more major life

26   activities.  Instead, he simply claims that the Postal Service "ignor[ed] [Domingo's] doctors'

27   order for [Domingo] to be on medical leave," and insisted on his attending a second FFDE.

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Compl. II at 29.  Because Domingo's illness is not a recognized disability, his claim falls

2   outside the purview of the Rehabilitation Act.

3          Furthermore, Domingo did not allege that he "suffered discrimination because of his

4   disability." Walton, 492 F.3d at 1005.  He did not claim that the Postal Service insisted on

5   his undergoing the second FFDE because of his disability.  Instead he alleged that the

6   motivation behind the second FFDE was to legitimize Dr. Saba's evaluation, which Domingo

7   claimed the Postal Service knew to be faulty.  Compl. II at 29.  Because Domingo's

8   allegations, even construed liberally, fail to state a claim under the Rehabilitation Act, the

9   Court GRANTS the Postal Service's motion to dismiss Domingo's Rehabilitation Act claim

10  under Domingo II with prejudice.

11      **C.      Claims Only In Domingo III**

12              **1.      Domingo's Rehabilitation Act Claim Should Survive The
                          Government's Motion To Dismiss**

13         In Domingo III, Domingo alleges that the Postal Service's insistence on his attending

14  a third FFDE after "being cleared by his treating mental specialist to work" was an

15  impermissible disability-related inquiry in violation of the Rehabilitation Act and the ADA

16  guidelines.  Compl. III at 17; see also 42 U.S.C. § 12112(d)(4).  The ADA limits when a

17  qualified employer may require a medical examination to inquire as to whether an employee

18  has a disability.  42 U.S.C. § 12112(d)(4).  Inquiries are permissible so long as they are "job

19  related and consistent with business necessity."  29 C.F.R. § 1630.14(c).  The Ninth Circuit

20  has articulated that "[t]he business necessity standard is quite high," Cripe v. City of San

21  Jose, 261 F.3d 877, 890 (9th Cir. 2001), and the burden of establishing business necessity

22  falls on the employer, Fredenburg v. Contra Costa Cnty. Dept. of Health Serv., 172 F.3d

23  1176, 1182 (9th Cir. 1999).  Furthermore, an employee does not have to be a "qualified

24  individual with a disability," as defined by the ADA, to have standing to invoke the Act's

25  protection against improper disability-related inquiries.  See Fredenburg, 172 F.3d at 1181-

26  82; Compl. III at 17.

27         Here, Domingo alleges that the Postal Service failed to articulate a business necessity

28  for requiring the third FFDE after Domingo sent the Postal Service his Kaiser records.

United States District Court
For the Northern District of California

1    Compl. III at 19.  Although the Postal Service failed to address this claim in MTD III, at the

2    motion hearing on February 7, 2014, the Postal Service stated that Domingo's Rehabilitation

3    Act claim in Domingo III was barred by res judicata.  The Postal Service was incorrect.

4         Res judicata, as previously discussed, refers to the preclusive effect of a judgment in

5    foreclosing relitigation of claims that were raised or should have been raised in earlier

6    litigation.  Frank, 216 F.3d at 850.  "For claim preclusion to apply, there must be (1) an

7    identity of claims in the two actions; (2) a final judgment on the merits in the first action; and

8    (3) identity or privity between the parties in the two actions."  Id.  Only the identity of the

9    claims needs to be analyzed here since elements (2) and (3) have already been established.

10   See Part III.A.1.b-c.

11        There are four questions a court considers when determining whether the prior

12   litigation involved the same claim: "(1) whether rights or interests established in the prior

13   judgment would be destroyed or impaired by prosecution of the second action; (2) whether

14   substantially the same evidence is presented in the two actions; (3) whether the two suits

15   involve infringement of the same right; and (4) whether the two suits arise out of the same

16   transactional nucleus of facts."  Gospel Missions of Am., 328 F.3d at 555 (citing Fund for

17   Animals, Inc., 962 F.2d at 1398).  The central criterion, however, is "whether the two suits

18   arise out of the same transactional nucleus of facts."  Frank, 216 F.3d at 851 (citing

19   Costantini, 681 F.2d at 1201-02).  Furthermore, a plaintiff cannot avoid the bar of res

20   judicata simply by "alleging conduct by the defendant not alleged in his prior action or by

21   pleading a new legal theory."  McClain, 793 F.2d at 1034.

22        The Postal Service argues that Domingo's Rehabilitation Act claim in Domingo III is

23   the same claim as his Rehabilitation Act claim in Domingo I.  For their argument to be true,

24   the two suits must at least arise out of the "same transactional nucleus of facts."  Frank, 216

25   F.3d at 851 (citation omitted).  That is not the case.  Domingo I's Rehabilitation Act claim

26   alleged that Domingo was discriminated against because of a disability he acquired after a

27   January 2005 car accident.  Order re MSJ at 6-8.  He based his claim on allegations regarding

28   the Postal Service's treatment of him after returning to duty in January 2006.  Order re MSJ

at 6-7.  On the other hand, Domingo III's Rehabilitation Act claim alleges that the Postal Service violated the Rehabilitation Act when it required the third FFDE in August 2007, an impermissible disability-related inquiry, even after receiving Domingo's physician's reports clearing him for duty.  Compl. III at 17.  The Domingo III claim was based on the Postal Service having disregarded his physician's reports, and providing no business necessity for the examination.  Id.  Therefore, the two claims are not based on the same nucleus of facts.

A litigant cannot escape the bar of res judicata by alleging conduct by the defendant in their current action that they could have alleged in their prior action.  See McClain, 793 F.3d at 1034.  Therefore, the Postal Service might argue that Domingo should have brought his disability-related inquiry claim in Domingo I related to the first FFDE.[5]  That argument, however, disregards the crux of Domingo's claim as to why the third FFDE was a violation of the Rehabilitation Act—the Postal Service did not show a business necessity for the FFDE in the face of Domingo's physician's reports showing that he was fit-for-duty.  Compl. III at 19.  Kaiser physicians examined Domingo only after the second FFDE, thus he could not have brought this claim under Domingo I related to the first FFDE.

Furthermore, at least two out of the three other questions under Gospel Missions of America do not support the finding of claim preclusion.  First, the rights or interests established in the first action are not injured by allowing this claim to proceed.  In Domingo I, this Court held that Domingo failed to show evidence of disability discrimination.  Here, there is no claim of disability discrimination, nor is the claim at all rooted in discrimination.  Rather, Domingo alleges an impermissible disability-related inquiry.  Thus, the right of the Postal Service to be free from liability stemming from Domingo's disability discrimination claim after being granted its motion for summary judgment is not "destroyed or impaired."  See Gospel Missions of Am., 328 F.3d at 555 (citation omitted).

Second, the two claims involve different evidence.  The claim in Domingo I required Domingo to prove that he had a disability, was otherwise qualified for employment, and he

---

[5]In Domingo I, Domingo could not have brought his disability-related inquiry claim as related to his third FFDE, since he did not administratively exhaust any claims related to his third FFDE in EEO Case No. 4F-945-0103-06.

24

was discriminated against because of his disability.  Order re MSJ at 6-7.  Here, the evidentiary burden falls on the Postal Service, and it must show that the third FFDE was the product of business necessity.  The evidence of the two claims is different.

Accordingly, in addition to the Postal Service's failure to address the claim in their MTD III, Domingo III's Rehabilitation Act claim is not barred by res judicata.  The Court DENIES the Postal Service's motion to dismiss Domingo's Rehabilitation Act claim under Domingo III.

**2.      Domingo Lacks Standing To Bring A Breach Of Contract Claim**

"Section 1208(b) of the Postal Reorganization Act gives federal courts jurisdiction over actions brought 'for violations of contracts between the Postal Service and a labor organization representing Postal Service employees . . . .'"  Stupy v. U.S. Postal Serv., 951 F.2d 1079, 1082 (9th Cir. 1991) (quoting 39 U.S.C. 1208(b)).  For an individual employee to make a section 1208(b) breach of contract claim alleging that an employer violated a collective bargaining agreement ("CBA"), the employee must demonstrate two things.  Id. at 1082.  First, the employee must show that his union breached its duty of fair representation in handling the grievance.  Id. (citations omitted).  Second, to establish a breach of fair representation the employee must exhaust the grievance procedure agreed upon in the CBA.  Id. (citations omitted).  Furthermore, the Ninth Circuit emphasizes that "'[i]t is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedure created in a collective bargaining agreement prior to bringing a . . . suit against the employer.'"  Id. (quoting Kaiser v. U.S. Postal Serv., 908 F.2d 47, 49 (6th Cir. 1990)).  An exception to the exhaustion requirement exists if the employee alleges that his union's handling of the grievance was arbitrary, discriminatory, or in bad faith.  Stupy, 951 F.2d at 1082.  If an employee fails to prove both that he exhausted the union grievance procedures set out in the CBA, and that the union breached its duty of fair representation in handling his grievance, then the employee has no standing to bring suit against the employer.  Id. at 1084; Valesquez v. U.S. Postal Service, No. C 92-3079 BAC, 1993 WL 226092, at *2 (N.D. Cal. June 21, 1993) aff'd 29 F.3d 637 (9th Cir. 1994).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Domingo filed a union grievance challenging his June 1, 2007 Notice of Separation in accordance with the four-step grievance and arbitration procedure set forth in Article 15 of the CBA between the Postal Service and the NRLCA.  Compl. III at 12; Domingo III, Gibbs Decl. Ex. B, at 77-88.[6]  On July 9, 2007, the Postal Service and an NRLCA union steward, on behalf of Domingo, entered into a Step 2 Grievance Decision ("Agreement").  Id. Because the Agreement was between the Postal Service and the NRLCA, it falls within the purview of section 1208(b).  Domingo now claims for the first time that the Postal Service breached the Agreement.  Compl. III at 12-13.

In alleging breach of the July 9, 2007 Agreement, Domingo has not started, let alone exhausted, the CBA's grievance and arbitration procedure ("Article 15")[7] as set out in Stupy, 951 F.2d at 1082.  Domingo argues in his opposition that Article 15 does not apply to his claim of breach because the Agreement itself dealt with issues outside of the CBA—Domingo attending another FFDE.  Plaintiff's Responses and Objections to Defendant's Motion to Dismiss (dkt. 23), at 17, 19 ("Opp'n III").  To the contrary, Domingo's breach claim must itself go through Article 15s four-step grievance and arbitration procedure, since he claims that the Postal Service breached their grievance procedure in violation of the CBA.  See Puissegur v. U.S. Postal Serv., No. CIV .A. 95-0592, 1996 WL 185812, at *2-4 (E.D. La. Apr. 18, 1996) (acknowledging that an employee claiming breach of a previously reached grievance agreement must grieve that claim through the CBA designated grievance procedure before bringing a civil suit); see also Domingo III, Gibbs Decl. Ex. B (Article 15 Grievance and Arbitration Procedure).  After completing the grievance and arbitration procedure, Domingo's only claim could have been that the NRLCA breached its duty of fair representation.  However, because Domingo never exhausted Article

---

[6]Domingo references the Agreement, which was provided in the Howard Gibbs Declaration, between the NRLCA and the Postal Service throughout his complaint, as well as directly addressing other documents provided in Howard Gibbs' Declaration in his Opposition III.  Therefore, this Court takes judicial notice of the Agreement.  See Corinthian Colls., 655 F.3d at 998-99.

[7]See Domingo III, Howard Gibbs Decl. Ex. B.

**United States District Court**
For the Northern District of California

15s four-step grievance procedure with regard to the alleged breach, the issue of whether the NRLCA fairly represented him through that procedure could not have been raised.

Accordingly, Domingo should have filed an Article 15 grievance for the alleged breach of the July 9, 2007 Agreement. If he was unsatisfied with the outcome of the procedure, and could allege that he did not receive fair representation, then he could have brought a claim before this Court. However, because he failed to do the above, he has no standing to bring his claim here. Thus the Court GRANTS the Postal Service's motion to dismiss Domingo's breach of contract claim with prejudice.[8]

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Postal Service's motions to dismiss.

**DOMINGO II**

The Court **GRANTS** the Postal Service's motion to dismiss in full:

- Domingo's discrimination, retaliation, harassment, and hostile work environment claims, as well as his tort claims of intentional and negligent infliction of emotional distress, his Rehabilitation Act claims, and his due process claims all with prejudice.

**DOMINGO III**

The Court **GRANTS** the Postal Service's motion to dismiss in part, as to:

- Domingo's discrimination, retaliation, harassment, and hostile work environment claims, as well as his breach of contract claim all with prejudice.

The Court **DENIES** the Postal Service's motion to dismiss in part, as to:

//

//

//

//

---

[8] As the Postal Service pointed out in their Domingo III Reply, the statute of limitations has likely run on Domingo's breach claim within the Article 15 grievance procedure. <u>See</u> Reply in Support of Mot. to Dismiss III at 9.

1    •    Domingo's Rehabilitation Act claim.

2    **IT IS SO ORDERED.**

3

4                                        _____

5                                        CHARLES  R. BREYER

6                                        UNITED STATES DISTRICT JUDGE

7

8

9    Dated: February ____, 2014